AUTOMATIC SPRINKLER COMPANY OF AMERICA, Appellee, v.
CENTRAL AMUSEMENT COMPANY et al., Appellants.

**FIXTURES:** Replevin—Intervening Rights of Lessee. Fixtures installed in a building, under contract with the owner and under an agreement that. title and right to possession shall remain in the one installing until paid for, may be replevined for default in payment, even against the tenant who has caused modifications and additions to be made thereto, none of which are injured or rendered nonusable by removal under the writ.

**REPLEVIN:** Demand—When Necessary. Replevin for fixtures will lie without demand on the owner, who is *not* in possession, provided proper demand is made on the tenant, who *is* in possession.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

MARCH 23, 1920.

REHEARING DENIED JULY 6, 1920.

ACTION in replevin to recover an automatic sprinkler system, installed on premises at 410–414 Eighth Street, Des Moines, known as the Empress Theater. Jury waived, and the cause tried to the court. From judgment entered against them, defendants appeal.—*Affirmed.*

*Read & Read,* for appellants.

*Arthur G. Rippey,* for appellee.

LADD, J.—I. It appears that Mrs. Coffee is the owner of premises known as 410 to 414 Eighth Street, in the city of Des Moines, and leased the same to the Central Amuse-

1. FIXTURES: replevin: intervening rights of lessee.

ment Company, a corporation subsequently changed in name to Elbert & Getchell, Incorporated, under the terms of which she caused to be erected for their use what is known as the Empress Theater. The cost of this building above a specified amount was to be paid by lessee. P. E. Coffee, in behalf of his wife, contracted with plaintiff for the installation of an automatic sprinkler system, at the agreed price of $1,575, one third thereof to be paid "when the material is shipped to substantially commence work, one third when the work is substantially completed, and the balance 30 days thereafter, based on the installation of 275 sprinklers." The system was duly installed, and $525 paid, as required, but no more. The reason for not paying is not made clear by the record, and is not material to this controversy. One of the conditions of the contract is that the Automatic Sprinkler Company "shall retain the title to the materials and equipment until full cash payment shall have been made therefor, and which in the meantime at the option of this company, shall be held in storage as its property, but without any storage charges to it, with the right to this company to enter upon the premises and remove the same in the case of any default." The installation of the sprinkler system occurred shortly after the building was completed and the lessee had taken possession thereof under the lease, and so continued until taken under the writ of replevin. That such possession was rightful

2. REPLEVIN: demand: when necessary.

is beyond question, and, as contended by appellants, a demand was essential to the termination of the right thereto. *Stanchfield v. Palmer*, 4 G. Greene 23; *Gilchrist v. Moore*, 7 Iowa 9. The evidence as to whether a demand was made is in conflict, the attorney then acting for plaintiff saying that he did demand the property, and Getchell denying that any demand was made on him. In these circumstances, the finding of the trial court ought not to be disturbed.

II. Appellants argue the cause as though Mrs. Coffee were in possession, and a demand on her were essential. As

she was not in possession, there was no occasion for such demand, and, as against her, plaintiff was entitled "to enter upon the premises and remove" the system first installed, owing to her default in making the payments as agreed.

III.   The original contract was for the installation of a wet system. Owing to the danger of the freezing of some of the pipes, Elbert & Getchell, Incorporated, entered into an agreement with plaintiff, under which change to a dry system was effected. The difference between these systems is explained in *Edgerly & Co. v. City of Ottumwa*, 174 Iowa 205. To effect the change, the wet alarm valve was replaced by a dry valve, and an air compressor installed, or, as said by appellee in the agreement:

"We will replace your present wet system with a dry pipe system, furnishing all the necessary material and labor and connect to the air compressor which is used for your heating system and will also replace the water motor alarm system, with an electric alarm system, placing a small electric bell in your boiler room and a buzzer in your box office, for the sum of $188.00."

Such change was effected, and the price paid by the lessee. Some time later, the latter had plaintiff "furnish and install a belt driven air compressor, 4x5 cylinder capable of pumping 40 to 50 lbs. pressure and delivering 5.4 cubic ft. of free air at 150 R. P. M. (per minute) including belt and pulley, for the sum of $50.00." These changes or additions were made; but there was no evidence that, in the removal of the original system, any of the materials furnished under these contracts were injured or changed, save that the original system was disconnected therefrom. Nor was there any showing that such materials might not be made use of, were another sprinkling system installed. Appellants contend, however, that, in entering into these contracts, appellee recognized the right of Elbert & Getchell, Incorporated, as lessee, to the use of the sprinkling system, and that the plaintiff is now estopped from asserting any claim to the system inconsistent with the corporation's right to use the same during the term of the lease. As the wet

system was installed before discovery was made that a dry system would be necessary, this must have happened prior to December, 1913, as finally concluded by one of the witnesses; for the contract made with Elbert & Getchell, Incorporated, for the change, was entered into on November 13th of that year, and the second contract, December 16th following. This change was rendered necessary "because of the fact that certain of the pipes were in great danger of freezing," and it involved merely replacing "the wet alarm valve with a dry valve," and putting "in an air compressor," as indicated in the contract. The last contract appears to have called for a particular kind of an air compressor, and was entered into so shortly after the first that it may have been merely a different compressor. The changes arranged were so near the date of the completion of the installation of the system contracted for by the owner that the company must have been familiar with the transaction, possibly knowing the nature of the contract with the owner. Had its managers so desired, they might have ascertained conditions of the contract; and we see no reason for holding that the plaintiff was under any obligation to thrust such knowledge upon them. Surely, the plaintiff is not shown to have said or done anything, through its agents, misleading the corporation in any manner, and we have not been able to discover any basis on which to rest a waiver or plea of estoppel. Any change negotiated by the lessee was at his own risk. In making the changes at the instance of the company, there was no assurance that the system already installed was put in on any conditions other than those of the contract, nor that the plaintiff would not interfere therewith, if necessary to collect the purchase price. Nor was there anything to indicate that the lessee proceeded otherwise than at his own risk. In removing the system under the contract by the owner, no injury appears to have been done to the parts procured at the instance of the lessee, and, as there was no waiver or basis for estoppel, the court rightly denied the defense interposed by Elbert & Getchell, Incorporated.—*Affirmed.*

WEAVER, C. J., GAYNOR and STEVENS, JJ., **concur.**